UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Anthony Lee Nelson, | Civil No. 06-3790 (DSD/FLN) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Joan Fabian, Commissioner,<br>Minnesota Department of Corrections, | |
| Respondent. | |

*Pro Se* Petitioner.
Jean E. Burdorf, Assistant County Attorney, for Respondent.

**THIS MATTER** came before the undersigned United States Magistrate Judge on Petitioner's Petition for Writ of Habeas Corpus [#1]. The Government filed a response to Petitioner's petition and requests that the Petition be dismissed. [#10; #11]. This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that the petition be dismissed with prejudice.

**I. BACKGROUND**

Petitioner Anthony Lee Nelson (hereinafter "Petitioner") is currently incarcerated at the Minnesota Correctional Facility at Oak Park Heights. On December 18, 2003, Petitioner was convicted of five counts of Aggravated Robbery, in violation of Minn. Stat. § 609.245, subd. 1., and one count of Prohibited Person in Possession of a Firearm, in violation of Minn. Stat. § 624.713, subd. 1(b). During the bench trial leading up to Petitioner's conviction, the district court made

-1-

extensive findings of fact. The Minnesota Court of Appeals summarized the relevant facts as follows:

> Appellant Anthony Nelson was charged with several aggravated robberies that occurred in the evening of July 5, 2003, at a Brooklyn Park apartment complex. Appellant was also charged with being a felon in possession of a firearm at that time.
>
> Appellant demanded a speedy trial at the omnibus hearing. On the date scheduled for trial, a continuance was ordered when a public defender was substituted for appellant's appointed counsel. When the parties appeared for trial, an agreement to present the case to the court for a bench trial based on stipulated evidence fell through. On the rescheduled trial date, appellant complained about his public defender's representation. Appellant contended that the delays in the case had been caused by his public defender. When the court asked him if he wanted to fire the public defender, appellant replied that he did. The court explained that if he did so, appellant would be representing himself at trial that day. Appellant was given an opportunity to consult with his public defender.
>
> The district court listed the charges for appellant and had the prosecutor detail the range of punishment for each offense. The prosecutor then restated his plea offer of an aggregate sentence of 180 months. The prosecutor, however, explained that if appellant was convicted of all counts following a trial, he would be asking for a departure from the presumptive aggregate sentence of about 350 months, relying on the particular cruelty of the robberies and the presence of children at those robberies. The district court then outlined the minimum and maximum fines that could be imposed and noted that no affirmative defenses had been asserted. The district court warned appellant that if he chose to represent himself he would be expected to fulfill the role of an attorney.
>
> At that point, the public defender indicated that appellant wanted to raise the issue of the suggestive show-up identification procedures. The district court agreed that appellant could do so during the court trial.
>
> Appellant completed a petition to proceed as pro se counsel and testified that he had read the petition, with the public defender answering his questions, and that he understood what the public defender's role as standby counsel would be. Appellant stated that he had read the petition carefully and he had had sufficient time to discuss it with the public defender. The district court granted appellant's request to represent himself at trial.
>
> The district court made detailed findings of fact summarizing the testimony at trial. The district court noted that the victims identified appellant as the man who had robbed them, identified the property that was seized from appellant or fell to the

ground when he was arrested as being their recently stolen property, and identified the gun that appellant was carrying when arrested as the gun that had been pointed at them earlier. The district court found appellant guilty on all counts.

*State v. Nelson*, 2005 WL 2126022 at *1-2 (Minn.App. Sept. 6, 2005).

Petitioner appealed his conviction to the Minnesota Court of Appeals on April 30, 2004. In his appeal to the Minnesota Court of Appeals, Petitioner argued that (1) Petitioner did not voluntarily and knowingly waive his right to counsel; (2) that Petitioner's sentence was improper; (3) that the prosecutor presented perjured testimony during trial; (4) that Petitioner's right to a speedy trial was violated; and (5) that the identification procedures used by the prosecution were improper. The Minnesota Court of Appeals rejected all of Petitioner's arguments relating to his convictions and affirmed his convictions. *Id*. at *5. On October 6, 2005, Petitioner filed a Petition for Discretionary Review with the Minnesota Supreme Court, arguing that (1) Petitioner did not voluntarily and knowingly waive his right to counsel; and (2) that the prosecutor presented perjured testimony during trial. On November 22, 2005, the Minnesota Supreme Court denied Petitioner's Petition for Discretionary Review. On September 11, 2006, Petitioner filed the present petition in this Court.

In the present Petition Petitioner argues that the trial court erred when it failed to sufficiently determine that Petitioner's right to counsel had been knowingly and intelligently waived, and that Petitioner was denied due process when the prosecutor failed to correct testimony that the prosecutor knew to be false. (Pet. at 3-14.) Defendant argues that Petitioner cannot establish that he is in custody in violation of the Constitution or laws or treaties of the United States; therefore, his petition must be dismissed.

## II. DISCUSSION

28 U.S.C. § 2254(a) states that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus claims raised by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court held that:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.' Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-13 (quoting 28 U.S.C. § 2254 (d)(1)). The Court further explained the "unreasonable

application" clause:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* 529 U.S. at 409, 411.

A writ of habeas corpus may also be available where the state courts' resolution of a case is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief may be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court decision, however, a "federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

A federal district court is not allowed to conduct its own *de novo* review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, the petitioner must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*.

Federal habeas relief is only available to a person in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") As a threshold matter, a petitioner

-5-

must present a federal question in his petition for relief.

> **A. The Holding of the Minnesota State Courts That Petitioner Voluntarily and Knowingly Waived his Right to Counsel was Not Contrary to Clearly Established Federal Law, and Did Not Represent an Unreasonable Application of Clearly Established Federal Law.**

The Sixth Amendment to the United States Constitution "guarantees a criminal defendant the right to counsel as well as the right to waive this right and act pro se in his or her own defense." *United States v. Mahasin*, 442 F.3d 687, 691 (8th Cir.2006). However, "[a] defendant may represent himself only if he makes a knowing, intelligent, and voluntary waiver of his Sixth Amendment right to counsel." *United States v. Stewart*, 20 F.3d 911, 917 (8th Cir.1994) (internal quotations omitted). A valid waiver occurs when "a district court adequately warns a defendant or if, on the record as a whole, [the Court] determine[s] that the defendant knew and understood the disadvantages of self-representation." *Id*. "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta v. California*, 422 U.S. 806, 835 (1975) (internal quotations omitted). Defendant's "technical legal knowledge . . . [is] not relevant to an assessment of his knowing exercise of the right to defend himself." *Id*. at 836.

In the present case Petitioner validly waived his right to counsel. When Petitioner informed the district court judge that he wanted to fire his appointed counsel, the court responded

> I want you to understand that you do have that right, but if you choose to exercise that right you will be proceeding in this case without an attorney. You will be proceeding on your own . . . I've had other Defendants exercise that right. It is your right, but you need to make it an educated decision."

(Respondent's Appendix, Trial Transcript Volume 1 (hereinafter referred to as "T1") at 5.)

Petitioner thereafter consulted with his public defender, and reaffirmed his desire to proceed without an attorney. (T1 at 5-7.) After affirming that it was Petitioner's desire to proceed to trial without an attorney, the trial court judge stated

> I want to make sure that you understand the nature of the charges against you. Do you understand that you are facing five Counts of Aggravated Robbery in the First Degree . . . [that] you are also facing one count of Prohibited Persons in Possession of a Firearm . . . [and] that each of those six counts constitutes a Felony?

(T1 at 7-8.) Petitioner responded that he did understand the charges that he was facing. The Court then stated " Rule 5 of the Rules of Criminal Procedure provides that the Defendant in the process of making a decision to proceed without counsel must be advised of the range of allowable punishments" and asked the state court prosecutor (hereinafter "prosecutor") to state the range of allowable punishments on the record. (T1 at 8.) The prosecutor thereafter duly stated the maximum and minimum term of imprisonment for each offense on the record. (T1 at 8-9.) The state court judge then required the prosecutor to state, on the record, the last plea offer transmitted to Petitioner by the State. The state court judge also required the prosecutor to state, on the record, the sentence "each Count would carry under the Sentencing Guidelines with a criminal history score of five." (T1 at 12.) The state court judge then stated the maximum amount of fine that could be imposed for each Count. (T1 at 12-13.) The state court judge asked Petitioner if he had any questions "about the range of punishments allowable with respect to the Counts [Petitioner was] facing" and Petitioner stated that he did not have any questions. (T1 at 13.)

The state court judge then asked Petitioner's attorney whether any affirmative defenses had been asserted by Petitioner, and Petitioner's attorney stated that Petitioner had not asserted any affirmative defenses. (T1 at 13.) The state court judge then noted

> Now you understand, Mr. Nelson, that if you were to proceed to trial with Mr. Bottema

representing you, that he would be the person to cross-examine the State's witnesses, to conduct direct examination of any witnesses who may be called on your behalf, to make objections to the Court that might relate to evidence being offered to the State, and to be in charge of offering any evidence that you might wish to offer to the Court on your own behalf? . . . And do you understand that if you proceed to trial without an attorney representing you, that the Court will expect you to conduct cross-examination of the State's witnesses and to assert any objections you might have to the State's evidence?

(T1 at 13-14.) Defendant stated that he understood. The state court judge then asked Petitioner whether he had any questions about what the Court would expect from him if he proceeded without an attorney, and Petitioner stated that he did not have any questions regarding the Court's expectations. (T1 at 14.)

In addition, Petitioner completed a "Petition to Proceed as Pro Se Counsel." (Respondent's Appendix.) Petitioner filled out the Petition to Proceed as Pro Se Counsel on December 10, 2003. Petitioner's counsel conducted the following examination of Petitioner on the record regarding his Petition to Proceed Pro Se.

> Mr. Bottema: Mr. Nelson, I'm showing you a document that's entitled Petition to Proceed as Pro Se Counsel, do you recognize it?
> Mr. Nelson: Yes, I do.
> Mr. Bottema: Earlier this afternoon you had the chance to read it over?
> Mr. Nelson: Yes.
> Mr. Bottema: Did you understand what was on it?
> Mr. Nelson: Yes.
> Mr. Bottema: What you didn't understand did you have an opportunity to ask any questions and have I answered all your questions about the rights you're giving up about what it means to proceed pro se and anything else?
> Mr. Nelson: Yes, you did.
> Mr. Bottema: Do you have any other questions for me, the Judge, the Prosecutor about the rights you're giving up, what you're doing here or anything else?
> Mr. Nelson: No, I do not.
> Mr. Bottema You understand that the [sic] as a stand-by counsel I'll sit here at counsel table, I'll pay attention to the evidence, and if you have any questions you can ask me and I'll give you advice?
> Mr. Nelson: Yes.

-8-

> Mr. Bottema: But ultimately how the case is handled will be up to you?
> Mr. Nelson: Yes.
> Mr. Bottema: You understand that the Court's going to hold you to the standard of understanding the rules and asking proper questions and making objections, is that right?
> Mr. Nelson: Yes.
> Mr. Bottema: If you have questions about that I'll be here and I'll be prepared to answer those questions, do you understand that?
> Mr. Nelson: Yes.
> Mr. Bottema: Do you have any other questions about what you're giving up by doing this or anything else?
> Mr. Nelson: No.
> Mr. Bottema: You're certain this is what you want to do?
> Mr. Nelson: Yes.

(T1 at 16-18.) Thereafter Petitioner's attorney offered the Petition to Proceed as Pro Se Counsel in the record, and the Court received the Petition. (T1 at 18.) The Court then asked Petitioner whether he believed that he had enough time to discuss the Petition to Proceed as Pro Se Counsel with his attorney, and Petitioner stated that he did. (T1 at 18.) The Court asked Petitioner whether he read the Petition to Proceed as Pro Se Counsel carefully, and Petitioner stated that he did. (T1 at 18.) The Court then asked Petitioner again whether there was anything about the Petition that Petitioner did not understand, or if Petitioner had any questions about the Petition, and Petitioner stated that there was nothing that he did not understand and that he did not have any questions regarding the Petition. (T1 at 18.) At that point the Court received the Petition and granted Petitioner's Petition to Proceed as Pro Se Counsel. (T1 at 18-19.) The Court appointed Mr. Bottema as Petitioner's advisory counsel. (T1 at 19-20.)

In his petition for a writ of habeas corpus, Petitioner argues that the trial court judge did not "advise or make Petitioner aware of the dangers and disadvantages of self-representation, possible circumstances in mitigation, possible defenses to defend against the charges or the statutory offenses included within the charges." (Pet. at 5.) Petitioner argues that

> without an affirmative showing on the record that Petitioner fully understood and was thoroughly advised by the Court of the dangers and disadvantages, that there may be defenses against the charges, possible mitigating circumstances and the statutory offenses included within the charges, it cannot be concluded that his choice to waive his constitutional right to counsel was done knowingly and intelligently on the day of trial as the State Courts suggest.

(Pet at 6.)

The Court has reviewed the record and concludes that Petitioner voluntarily, knowingly and intelligently waived his right to counsel. Once Petitioner first asserted his right to proceed pro se, Petitioner was permitted to consult with his attorney. A recess was convened for that purpose, and at the conclusion of that consultation Petitioner reaffirmed his desire to proceed pro se. The trial court judge and the prosecutor thereafter informed Petitioner, on the record, as to the charges pending against him and the potential penalties for those charges in the event Petitioner was convicted. After informing Petitioner of these charges and potential penalties, the state court judge asked Petitioner if he had any questions regarding the charges or potential penalties, and Petitioner stated that he did not. The trial court judge sufficiently alerted Petitioner to the dangers and disadvantages of pro se representation, including the fact that Petitioner would be responsible for cross-examining the State's witnesses and asserting any objections to the state's evidence. In addition, Petitioner stated on the record, in response to questioning from his attorney, that he understood that the court would hold him to the standards of understanding the rules, asking proper questions and making proper objections. While the trial court did not express its own opinion that pro se representation was ill-advised, the trial court did notify Petitioner that he would be held to the same standards as an attorney during the trial.

In addition, Petitioner filled out a written Petition to Proceed as Pro Se Counsel, and he did so with the assistance of his appointed attorney. In the Petition to Proceed as Pro Se Counsel

-10-

Petitioner acknowledged that he understood that if he failed to do something in a timely manner, or made a mistake because of his unfamiliarity with the law, he would be bound by those decisions and would have to deal with the consequences himself. (Respondent's Appendix.) Petitioner also acknowledged in this Petition that the support staff of the public defender would not be available to him, and that he would have to conduct his own legal research. (Respondent's Appendix.)

After signing the Petition to Proceed as Pro Se Counsel, Petitioner's attorney examined him on the record regarding the Petition. Petitioner testified that he understood the substance of the Petition, that he did not have any questions regarding the substance of the Petition, that any questions he did have were answered by his attorney, that he did not have any lingering questions regarding the Petition, that the Court would hold him "to the standard of understanding the rules and asking proper questions and making objections" and that he was certain that he wanted to proceed pro se. (T1 at 16-18.) The Court then asked Petitioner whether he believed that he had enough time to discuss the Petition to Proceed as Pro Se Counsel with his attorney, and Petitioner stated that he did. (T1 at 18.) The Court asked Petitioner whether he read the Petition to Proceed as Pro Se Counsel carefully, and Petitioner stated that he did. (T1 at 18.) The Court then asked Petitioner again whether there was anything about the Petition that Petitioner did not understand, or if Petitioner had any questions about the Petition, and Petitioner stated that there was nothing that he did not understand and that he did not have any questions regarding the Petition. (T1 at 18.)

Furthermore, Petitioner also had the benefit of stand-by counsel throughout his trial. Petitioner acknowledged on the record that he understood that he could ask for advice from stand-by counsel and ask questions of stand-by counsel during the course of the trial. Based on a review of the entire record of this case, this Court concludes that the holding of the Minnesota State courts that

Petitioner knowingly, intelligently and voluntarily waived his Sixth Amendment right to counsel is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. This Court further concludes that the decision of the Minnesota State courts was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, insofar as Petitioner's Petition is based on his allegation that his Sixth Amendment rights were violated when he was permitted to proceed pro se, the Court recommends that the Petition be denied.

### B.     Petitioner's Due Process Rights Were Not Violated.

"The prosecution may not solicit perjured testimony to secure a conviction or allow testimony that it knows is false to remain uncorrected." *United States v. Milk*, 447 F.3d 593, 601 (8th Cir.2006) (citing *United States v. Martin*, 59 F.3d 767, 770 (8th Cir.1995)). "To establish a constitutional violation arising from the use of false testimony, 'the testimony must have been perjured, the government must have known it was, and there must have been a reasonable likelihood that the perjured testimony affected the jury's determinations.' " *Milk*, 447 F.3d at 601 (quoting *United States v. Boone*, 437 F.3d 829, 840 (8th Cir.2006) (citing Martin, 59 F.3d at 770)). "'Mere inconsistency' between witnesses' testimony is not necessarily perjury, and not every contradiction is material." *United States v. Martin*, 59 F.3d 767, 770 (8th Cir.1995) (quoting *United States v. Nelson*, 970 F.3d 439, 443 (8th Cir.1992), *cert. denied*, 506 U.S. 903 (1992)). " '[A] challenge to evidence through another witness or prior inconsistent statements [is] insufficient to establish prosecutorial use of false testimony.' " *Id*. (quoting *United States v. White*, 724 F.2d 714, 717 (8th Cir.1984)) (citations omitted).

Petitioner alleges that his due process rights were violated when the prosecutor failed "to

correct known to be false testimony." (Pet. at 9.) Petitioner alleges that the prosecutor violated his due process rights when the prosecutor failed to correct what he knew to be perjured testimony from witness and victim, Mr. Mark Scott.  During cross-examination, Petitioner asked Mr. Scott whether the suspect who robbed Mr. Scott had any facial hair, and Mr. Scott testified that "[t]he suspect had a whisker I think, yes, a whisker."  (T1 at 84.)

On redirect examination, the prosecutor, Mr. Casserly, had the following exchange with witness Mark Scott.

> Q: Now, earlier you were shown a portion of an interview that you had with Detective Barritt at the Brooklyn Park Police Department back in July.  Is that right?
> A: Yeah
> Q: And that interview was given at a time . . . when the facts of this case were more fresh in your memory than they are now, is that right?
> A: Yeah.
> Q: And, ah, you were asked whether you could describe . . . with specifics what the facial hair of the robber looked like in – – and you were asked that by Mr. Nelson, right?
> A: Yeah.
> Q: . . . Are you able to, as you sit here in court, describe with specifics what kind of facial hair the robber had?
> A: No.
> Q: Would it refresh your recollection to look at a portion of your conversation with Detective Barritt about the way you described the facial hair of the robber on that day?
> A: Yeah . . . [at that point Mr. Scott reviewed the portion of the police report wherein he described the robber's facial hair.] . . .
> Q: Okay, what did you tell the police about the robber's facial hair?
> A: I told them that I think he had a mustache.
> Q: Okay.  Did you say anything about whether or not, ah, he had little whiskers?
> A: I – – I didn't mention that to the cops.

(T1 at 97-98.) Neither the prosecutor nor Petitioner asked any more questions about the "whiskers" of the robber.  The Brooklyn Park Police Department Offense report, dated July 8, 2003, which Mr. Scott used to refresh his recollection on the witness stand during redirect examination, shows that

-13-

Mr. Scott had in fact stated in an interview with Brooklyn Park police that he thought the robber "has a little whiskers." (Pet. App. D.)

> Petitioner argues that:
>
> during the prosecutors redirect examination of his witness, the prosecutor offered the witness to read his prior statement given to a Law enforcement detective for memory recollection purposes concerning the culprit's facial characteristics . . . The prosecutor then approached the witness and pointed out the relevant questions on the report . . . and proceeded to tell him to read the report . . . After the witness completed his examination of the report, the prosecutor asked him whether or not had he previously mentioned that the culprit had 'little whiskers' . . . The witnesses answer was 'no'. The prosecutor knew this witnesses answer to his question was false because he had the statement which showed the truth in his hands. However, the prosecutor just allowed this falsehood to go uncorrected when it appeared.

(Pet. 11.)

> The Minnesota Court of Appeals ruled that
>
> Appellant's claim that the prosecutor presented perjured testimony asks this court to assess the credibility of a prosecution witness, M.S.S., the first aggravated-robbery victim. But the subject of the allegedly inconsistent testimony is so minor that it was not even mentioned by the district court in its extensive findings of fact to support the finding of guilt. Any inconsistency was for the district court to consider when judging the overall credibility of that witness's testimony.

*Nelson*, 2005 WL 2126022 at *7. This determination was not contrary to clearly established federal law, nor was this determination an unreasonable application of clearly established Federal law. The inconsistency about whether Mr. Scott told Brooklyn Park police that the perpetrator had "whiskers" is minor. Petitioner has not shown that there is a reasonable likelihood that the perjured testimony (in this case, Mr. Scott's testimony that he did not tell the police that the robber had little "whiskers" when in fact he did) effected the factfinder's determinations. The alleged inconsistency in Mr. Scott's testimony had no effect on the trial court's findings and conclusions. Indeed, the Minnesota Court of Appeals noted "that it was not even mentioned by the district court in its extensive findings

of fact to support the finding of guilt." 2005 WL 2126022 * 7. Therefore, the Court concludes that the holding of the Minnesota Court of Appeals was not contrary to federal law, did not represent an unreasonable application of federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court recommends that, insofar as Petitioner's Petition alleges that his due process rights were violated when the prosecutor failed to correct Mr. Scott's testimony, Petitioner's Petition be dismissed.

### III. RECOMMENDATION

Based on all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [#1] be **DISMISSED WITH PREJUDICE**.

DATED: June 5, 2007                                    s/ *Franklin L. Noel*
                                                       FRANKLIN L. NOEL
                                                       United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 22, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.